**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CARDIGAN HODGE<br><br>　　Plaintiff<br>　　　　　　v.<br><br>ROBLEX AVIATION, INC.; ROBERTO E. RODRIGUEZ<br><br>　　Defendants | **Civil No.  09-1445 (SEC)** |

**OPINION AND ORDER**

Pending before the Court is Defendants Roblex Aviation, Inc. ("Roblex") and Roberto E. Rodríguez's ("Rodríguez") (collectively "Defendants") motion for summary judgment (Dockets ## 15 & 16), and Plaintiff Cardigan Hodge's ("Plaintiff" or "Hodge") opposition thereto (Docket # 22). Defendants replied (Dockets ## 26, 27 & 37), and Plaintiff sur-replied (Docket # 34). After carefully considering the filings, the evidence on the record, and the applicable law, Defendants' Motion for Summary Judgment is **DENIED**.

**Factual and Procedural Background**

On May 19, 2009, Plaintiff filed suit against Defendants under Title VII of the Civil Rights Act, 42 U.S.C § 2000e *et seq.*, the Consolidated Omnibus Budget Reconciliation Act "(COBRA"), and Puerto Rico Law No. 100 of June 30, 1959, PR Laws Ann. tit. 29 §146 et seq., Law No. 80 of May 30, 1976, PR Laws Ann. tit. 29 §185a, and Law No. 115 of December 20, 1991, PR Laws Ann. tit. 29 § 194 et seq. Plaintiff alleges that Defendants harassed and discriminated against him by reason of race and/or color. He further contends that he was terminated without cause, and in retaliation for filing charges before the Equal Employment Opportunity Comission ("EEOC"). Lastly, Plaintiff avers Defendants failed to inform him about his rights under COBRA.

Defendants answered the complaint (Docket # 4), and discovery then ensued. On June 1, 2010, Defendants filed the present motion, arguing that Plaintiff was lawfully terminated

**Civil No. 09-1445 (SEC)**                                                                                                         2

for failing to comply with the company's rules and regulations. Specifically, they point to Plaintiff's alleged tardiness, his failure to obtain a valid Puerto Rico drivers license as required by law and company policy, and to sign the flight/travel logs despite several notices advising Plaintiff to correct said deficiencies.

Plaintiff opposed, averring that Defendants engaged in a pattern of harassment by reason of his race, which resulted in a hostile work environment. He further contends that Defendants treated him differently from other pilots, to wit, they did not sanction other Caucasian pilots for their failure to obtain valid Puerto Rico driver licenses and to sign the flight/travel logs. According to Plaintiff, there were no company rules or regulations requiring pilots to have a valid drivers license or imposing sanctions for a pilot's failure to sign the flight/travel log. Notwithstanding, Plaintiff points out that he always signed the flight/travel log, and despite his efforts, was unable to obtain the documents needed to obtain a Puerto Rico drivers license. Both parties filed replies, and sur-replies.

**Applicable Law and Analysis**

*R. FED. CIV. P. 56*

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the

**Civil No. 09-1445 (SEC)**                                                                                                   3

nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005)(citing Garside, 895 F.2d at 48 (1st Cir. 1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (citing Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . . Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8 (citing Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

**Civil No. 09-1445 (SEC)**                                                                                                       4

Because the instant motions are for summary judgment, the parties must comply with the requirements of Local Rule 56, and file a statement of facts, set forth in numbered paragraphs, and supported by record citations. See Local Rule 56(b). In turn, when confronted with a motion for summary judgment, the opposing party must:

> [s]ubmit with its opposition a separate, short, and concise statement of material facts. The opposition shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule.

Local Rule 56(c). If the opposing party fails to do so, "summary judgment should, if appropriate, be entered." Rule 56(e)(2). These rules "are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the court." Cabán-Hernández v. Phillip Morris USA, Inc., 486 F.3d 1, 8(1st Cir. 2007). The First Circuit has repeatedly held that when the parties ignore the Local Rules, they do so at their peril. See Ruiz-Rivera v. Riley, 209 F. 3d 24, 28 (1st Cir. 2000).

**Applicable Law and Analysis**

Before setting forth the facts found by this Court to be undisputed and relevant to the matter at hand, we must first address several compliance issues presented to the Court when reviewing Defendants' and Plaintiff's statements of facts.

Pursuant to Local Rule 56(e), this Court may disregard any statement of fact that is not supported by a specific record citation. Insofar as Defendants failed to provide record citations in support of ¶ 7[1] of their Statement of Uncontested Facts ("Defendants' SUF")(Docket # 16), it will be disregarded when ruling on the instant motion. Additionally, Defendants exclusively cite their answer to the complaint and the Joint Case Management Memorandum in support of some of their proposed statements of fact (See Defendants' SUF

---

[1] Although Defendants also failed to properly support ¶¶ 5 and 6, Plaintiff essentially admitted the same.

**Civil No. 09-1445 (SEC)** 5

at Docket # 16, ¶¶ 8-12 & 14[2]) and in opposition to Plaintiff's additional facts (See Docket # 27, p. 5, ¶¶ 8-10, 13, 14, 15 & 20), which is insufficient for purposes of summary judgment because said filings do not provide the basis for Defendants' knowledge on these issues, aside from mere conjectures and unsupported speculation. Moreover, although Defendants denied or admitted each of Plaintiff's additional facts, they failed to provide specific record citations in support of some of their denials (See Docket # 27, pp. 4-7, ¶¶ 2, 4, 6, 7, 18 & 19), and once again only cited their answer to the complaint and the Joint Case Management Memorandum (See Docket # 27, pp. 4-7, ¶¶ 8-10, 13, 14, 15 & 20) when opposing the same. Furthermore, in their reply to Plaintiff's additional facts, Defendants provide exhibits in the Spanish language without leave to file the same, and lacking certified English translations as required by Local Rule 5(g) (See Docket # 27, p. 5, ¶ 3, 5, 11 & 12).

Additionally, Defendants failed to submit an affidavit or unsworn statement with their motion for summary judgment to authenticate their exhibits.[3] See Exhibits at Docket # 15-2. Instead, Defendants included an unverified statement by Roberto Rodríguez, Roblex's President, in their reply. See Docket # 26-2. Since the unverified statement was filed after Defendants' motion for summary judgment, the same does not properly support Defendants' SUF nor authenticate Defendants' exhibits at Docket # 15-2. This alone suffices to disallow

---

[2] This proposed statement is also a conclusion of law which is better left for this Court to decide.

[3] It is well settled that "[d]ocuments supporting or opposing summary judgment must be properly authenticated." Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir.2000) (citing FED.R.CIV.P. Rule 56(e)). "The failure to authenticate a document properly precludes its consideration on a motion for summary judgment." Robinson v. Bodoff, 355 F.Supp.2d 578, 582 (D.Mass.2005) (striking all exhibits that were submitted without affidavits). To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e). 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 2722 (3d ed.1998).

**Civil No. 09-1445 (SEC)** 6

Defendants' exhibits insofar as the First Circuit has consistently held that "[t]o be admissible at the summary judgment stage, 'documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e).'" Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000) (citing Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993)). However, we further note that Defendants also failed to provide specific record citations when citing Rodríguez's unverified statement, that is, the page or paragraph number of said document that supports their denials in the reply (See Docket # 27, ¶ 6, 7 & 18). As previously stated, Local Rule 56(e) specifically requires that all assertions facts contained in all supporting or opposing statements of facts be followed by a citation to the specific page, or paragraph, of the identified record material supporting it. Accordingly, those proposed facts that are not supported by a specific record citation may be disregarded by this Court when ruling on the instant motion. See Defendants' SUF at Docket # 16, ¶ 12 & 13; Docket # 27, p. 6, ¶¶ 16, 17, 21, 22 & 23.

Local Rule 56(c) also requires that, if the nonmoving party includes any additional facts, such facts must be in a separate section, set forth in separate numbered paragraphs, and supported by a specific record citation. Thus any additional facts provided by Plaintiff when denying or qualifying Defendant's SUF must be disregarded by this Court. Notwithstanding, "Plaintiff's Additional Relevant Facts" at Docket # 22-2 are deemed admitted when properly supported.

Considering the foregoing, the relevant uncontested facts are as follows. Co-defendant Roblex Aviation, Inc. is a local corporation organized under the laws of the Commonwealth of Puerto Rico. Defendant's SUF ¶ 1. Plaintiff, an african-american, started working for Roblex as a pilot in 2000. SUF ¶ 2; Docket # 22-2, p. 6, ¶ 1. Shortly after Plaintiff started to work for Defendant, he was awarded a salary increase due to his performance. SUF ¶ 6. During his employment at Roblex, Plaintiff received several written notices and/or admonitions. SUF ¶ 12. From 2000 to March 11, 2008, Roblex employed 3 pilots, and with

**Civil No. 09-1445 (SEC)** 7

the exception of Hodge, all of the pilots were Caucasian. Docket # 22-2, p. 6, ¶ 2.

Since Hodge started working for Roblex, and until his termination, he received health insurance benefits. Docket # 22-2, p. 6, ¶ 3. Hodge and his two daughters were enrolled in a health insurance plan provided by Roblex as part of Hodge's salary and benefits. Id. Hodge made monthly payments to Roblex in order to maintain and stay current with his health insurance benefits. Id. Despite making the salary deductions for health insurance benefits, Roblex failed to pay the health insurance provider. Docket # 22-2, p. 6, ¶ 4. As a result, Hodge and his daughters were denied medical coverage. Id. & p. 8, ¶ 12. On several occasions, Hodge requested that Roblex reimburse the money that was deducted from his paycheck in order to pay for his daughters' health insurance benefits. Docket # 22-2, p. 7, ¶ 5. However, Roblex never returned the amounts deducted from Hodge's paycheck for said purpose. Id. Roblex also failed to explain to Hodge about his rights and obligations under COBRA, and to offer Hodge health insurance benefits after his termination. Docket # 22-2, p. 7, ¶ 11.

During his employment at Roblex, Rodríguez would constantly insult Hodge, referring to him in derogatory and discriminatory terms, for example he stated that "the nigger should get his shit together and stop complaining," and would threaten Hodge that he was going to be discharged. Docket # 22-2, p. 7, ¶ 6; p. 8, ¶ 14. He also told Hodge that he would take away his health insurance benefits and plan because of his complaining. Docket # 22-2, p. 7, ¶ 8. Moreover, after Hodge complained about the improper salary deductions, and the checks returned for insufficient funds,[4] Rodríguez constantly referred to Hodge as: "nigger", "black", "fucking nigger", "fucking black", "negro malagradecido" (ungrateful black), "negro engreído" (spoiled black), "oye negro." Docket # 22-2, p. 8, ¶ 13. Rodríguez also

---

[4] Roblex also issued several checks that were returned due to insufficient funds, while the other Caucasian pilots' checks were never returned due to insufficient funds. Docket # 22-2, p. 7, ¶ 7.

**Civil No. 09-1445 (SEC)** 8

continuously expressed that "the nigger should get his shit together or was going to be discharged," and that "he was sick and tire of the fucking nigger complaining." Id. Hodge complained almost once a month to his supervisors, Rodríguez, Luis Torres and Nelson Fajardo, but no remedial or corrective action was taken. Docket # 22-2, p. 8-9, ¶ 14. After Hodge complained, Rodríguez continued and increased the frequency in which he referred to Hodge with the previously mentioned comments. Id.

Roblex did not have any type of rule or regulation regarding the signing and execution of travel/flight logs, or requiring its pilots to have a Puerto Rico drivers license. Docket # 22-2, p. 9 & 11, ¶ 17 & 21. Notwithstanding, Hodge always signed and executed the logs required for flying. Id. Roblex never issued any disciplinary action to Hodge, nor any other pilot, as a result of his alleged failure to sign and execute the logs. Docket # 22-2, p. 9, ¶¶ 18 & 19. Similarly, the other Caucasian pilots did not have a Puerto Rico valid drivers license, nevertheless, none of them were disciplined or terminated from employment for said reason. Docket # 22-2, p. 11, ¶¶ 23. At the time that Hodge was hired, Roblex was fully aware that Hodge did not have a Puerto Rico drivers license. Docket # 22-2, p. 9, ¶ 20. Moreover, Hodge did not drive a vehicle within the airport's facilities. Id.

On February 28, 2008, Plaintiff filed a charge at the Anti Discrimination Unit and the EEOC, and notified Defendants about said filing on even date. SUF ¶ 3 & 10; Docket # 22-2, p. 8-9, ¶ 15. After Hodge filed and notified Rodríguez of the discrimination charge filed before the EEOC, Rodríguez told Hodge that he was going to discharge him and would never offer him any type of health insurance benefit under COBRA. Docket # 22-2, p. 7, ¶ 9. Rodríguez also told Hodge that COBRA benefits did not apply to blacks. Docket # 22-2, p. 7, ¶ 10. Approximately three weeks after the filing of the EEOC charge, Hodge received a termination letter. Docket # 22-2, p. 9, ¶ 16. Specifically, on March 11, 2008, Plaintiff was discharged by Defendant. SUF ¶ 4 & 10. On February 23, 2009, the EEOC issued the Notice of Right to Sue, terminated processing Plaintiff's charge, and noted that more than 180 days

**Civil No. 09-1445 (SEC)**                                                                                                    9

passed since the filing of the charge. SUF ¶ 5; Docket # 22-2, p. 1, ¶ 5.

In the complaint, Plaintiff alleges discrimination on three fronts. First, he argues that Defendants' actions created a hostile work environment. Second, he contends that his discharge was racially motivated. Lastly, he avers that he was retaliated against for filing a charge at the EEOC. Accordingly, in their motion for summary judgment, Defendants proffer that Plaintiff's discharge was justified since he failed to comply with certain company policies. Since the present suit sets forth claims under Title VII, COBRA and several local statutes, we will discuss each in turn.

*Title VII*

In general, Title VII provides a "vehicle through which an individual may seek recovery for employment discrimination on the grounds of race, color, religion, gender, or national origin." Franceschi v. United States VA, 514 F.3d 81, 85 (1st Cir. 2008). Specifically, Title VII prohibits an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

*Racially discriminatory discharge*

It is well-settled that a plaintiff in a case such as this one must first establish, by a preponderance of the evidence, a "prima facie" case of racial discrimination pursuant to the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), scheme. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (U.S. 1993). To wit, the plaintiff alleging racially discriminatory discharge bears the initial burden of showing (i) that he is a member of the protected class; (ii) that his work met defendant's legitimate work expectations; (iii) that, despite his performance, he was discharged; and (iv) that, after his discharge, defendant replaced him with someone outside the protected class. See id.; McDonnell Douglas, 411 U.S. at 802; Lewis v. City of Boston, 321 F.3d 207, 214 (1st Cir. 2003); Landrau-Romero v. Banco-Popular

de Puerto Rico, 212 F.3d 607, 612-613 (1st Cir. ); Bermudez-Vazquez v. Centennial de Puerto Rico, 278 F. Supp. 2d 174, 187-188 (D.P.R. 2003); Essex v. UPS, 111 F. 3d 1304, 1309 (7th Cir. 1997); McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). However, the *prima facie* case requirements are somewhat flexible. McDonnell Douglas, 411 U.S. at 802 n.13 (stating that "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required . . . is not necessarily applicable to every respect in differing factual situations."). Thus "[a]bsent a showing that plaintiff was replaced, he may still meet his flexible prima facie case burden..." Putman v. Unity Health Sys., 348 F.3d 732, 736 (8th Cir. 2003).

The Supreme Court has explained that although under the McDonnell Douglas scheme the establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). Thus, albeit "the McDonnell Douglas presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case -- i.e., the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason,'" Hicks, 509 U.S. at 506-507 (citing Burdine, 450 U.S. at 254), this alone does not exempt the plaintiff from having to prove that he was discriminated against.

Since Plaintiff in this case does not show that he was replaced by Defendants, "to establish a prima facie case, he needed to present some other evidence that would give rise to an inference of unlawful discrimination." Id. "A common way of proving pretext is to show that similarly situated employees were more favorably treated." Id.; see also Essex, 111 F.3 d at 1311.

In the present case, Plaintiff is a member of a protected class. Although admittedly, Plaintiff received several warnings and admonitions, pursuant to the uncontested facts, Roblex

did not sanction or discipline any other employee on these grounds. Moreover, Roblex admits that Plaintiff was awarded salary increases due to his work performance. Their proffered legitimate, non-retaliatory reason for Plaintiff's discharge is that he failed to obtain a valid Puerto Rico drivers license, and sign the travel/flight logs. However, they fail to show that a company policy existed whereupon Plaintiff was forewarned that failure to comply with said requisites could entail dismissal. This Court further notes that even if deemed admitted, Roblex's Exhibit A (alleged excerpt of the company policy)[5] confirms that Hodge did not need a Puerto Rico drivers license in order to perform his functions and duties as a pilot. Docket # 22-2, p. 11, ¶ 22.

Although Plaintiff was not replaced, there is evidence to suggest that similarly situated employees were treated more favorably. Specifically, pursuant to the uncontested facts, Roblex never issued any disciplinary action to Hodge prior to his dismissal, nor sanctioned any other pilot, as a result of their alleged failure to sign and execute the travel logs. Similarly, although the other Caucasian pilots did not have a Puerto Rico valid drivers license, none of them were disciplined or terminated from employment for said reason. Even more, Hodge expended considerable effort in order to try to obtain a Puerto Rico drivers license, and was terminated prior to completing the process. Docket # 22-2, p. 11, ¶ 24. While it is well settled that insubordination and violation of company policy are legitimate reasons for termination, Plaintiff has created controversy as to material issues of fact, to wit, whether Roblex's proffered company policy existed, and if so, whether Hodge failed to comply with the same. Putman, 348 F.3d at 736.

Examining the record in the light most favorable to the Plaintiff, and considering all of the circumstances in this case, Defendants' request for summary judgment on this front is

---

[5] As Plaintiff correctly points out, and this Court stated before, the document attached to Defendant's SUF ¶ 8, which evinces its proffered rules and regulations requiring a Puerto Rico drivers license, is not properly authenticated.

**DENIED**.

*Hostile work environment*

The Supreme Court has held that "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," Title VII is violated. Harris v. Forklift Sys., 510 U.S. 17, 21 (1993) (internal citations omitted); see also Salgado-Candelario v. Ericsson Caribbean, Inc., 614 F. Supp. 2d 151, 172 (D.P.R. 2008).

In order to succeed in a hostile work environment claim, a plaintiff must show: (1) that he is a member of a protected class; (2) that he was subjected to unwelcome harassment based upon his protected status; (3) that the harassment was based upon his gender, race, national origin, or disability; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that the objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive, and the victim did perceive it to be so; and (6) that some basis for employer liability has been established. Ericsson Caribbean, Inc., 614 F. Supp. 2d at 172 (citing Douglas v. J.C. Penney, 474 F.3d 10, 15 (1st Cir. 2007).

Moreover, it is well-settled that in determining whether an environment is hostile or abusive, courts must look at all the circumstances of the case, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Landrau-Romero, 212 F.3d at 613-614 (citing Harris, 510 U.S. at 23); see also Ericsson, 614 F. Supp. 2d at 172. This standard differentiates any conduct that is merely offensive from conduct that causes a tangible psychological injury. Landrau-Romero, 212 F.3d at 613-614. Thus, in this context, the "mere utterance of an . . . epithet which engenders offensive feelings in a employee," does not sufficiently affect the conditions of employment

to implicate Title VII. Id. (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986); see also Ericsson, 614 F.3d at 172. That is, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview." Id. at 21-22.

Essentially, Plaintiff's claims hinge on Defendants' continuous and racially offensive remarks, which took place for an extended period of time. In so doing, he sets forth specific epithets made by Rodríguez on numerous occasions. To wit, Rodríguez constantly referred to Hodge as: "nigger", "black", "fucking nigger", "fucking black", "negro malagradecido" (ungrateful black), "negro engreído" (spoiled black), and "oye negro." Furthermore, Rodríguez stated that "the nigger should get his shit together and stop complaining," that "he was sick and tire of the fucking nigger complaining," that COBRA benefits did not apply to blacks, and threatened to discharge Hodge and take away his health insurance benefits and plan because of his "complaining." Despite Hodge's complaints to Rodríguez and other company officials, no remedial or corrective action was taken.

Although offhand comments and isolated incidents of offensive conduct, unless extremely serious, do not constitute a hostile work environment, racially offensive remarks two or three times a week, as well as making other offensive remarks to an employee may create a hostile work environment. See Gordon v. Shafer Contr. Co., 469 F.3d 1191, 1195 (8th Cir. 2006). The First Circuit has held that "[a]n employee states a claim under Title VII if he alleges offensive, race-based conduct that is severe or pervasive enough to create an objectively hostile or abusive work environment and is subjectively perceived by the victim as abusive." Landrau-Romero, 212 F.3d at 613. Albeit this Court has recognized that "the inquiry into a plaintiff's claim is necessarily fact-specific, and, therefore, generally left to the fact-finder, 'summary judgment is an appropriate vehicle for policing the baseline for hostile environment claims.'" Ericsson, 614 F. Supp. 2d at 172 (citing Pomales v. Celulares

Telefonica, Inc., 447 F.3d 79, 83 (1st Cir. 2006)).

Crediting Plaintiff's testimony, as we are required to do on review of a summary judgment, and looking at the totality of the circumstances, we assume that these remarks are sufficiently pervasive to constitute a hostile work environment. Specifically, Plaintiff's affidavit is sufficient to withstand summary judgment as to the hostile working environment claims. The First Circuit has noted that "[a]lleged conduct that is not explicitly racial in nature may, in appropriate circumstances, be considered along with more overtly discriminatory conduct in assessing a Title VII harassment claim." Landrau-Romero, 212 F.3d at 614. At this juncture we must draw all reasonable inferences therefrom in the light most favorable to Plaintiff, and the evidence he provides might, if proven, support a hostile work environment claim. Accordingly, Defendants' motion for summary judgment on these grounds is **DENIED**.

*Retaliation claims*

For a prima facie case of retaliation, Plaintiff must show "that he engaged in protected conduct, that he suffered an adverse employment action, and that the adverse action was causally linked to the protected conduct." Ericsson, 614 F. Supp. 2d at 178. When the plaintiff establishes a *prima facie* showing of retaliation, the McDonnell Douglas burden-shifting analysis applies. Id. Thus the defendant must then articulate a legitimate and non-retaliatory reason for its employment decision. Id. at 179 (citing Calero-Cerezo v. U.S. Dept. Of Justice, 355 F.3d 6, 26 (1st Cir. 2004). If the defendant does so, the burden shifts to the plaintiff to show that "the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." Id.

There is no controversy as to the fact that Plaintiff engaged in a protected conduct (filed a charge at the EEOC), and that he suffered an adverse employment action (was discharged). As to causality, a Plaintiff may defeat summary judgment by showing close temporal proximity between the protected conduct and the adverse employment action. Id. This is satisfied in the present case since Plaintiff was discharged three weeks after filing the

EEOC charge. Accordingly, Defendants' request for dismissal of Plaintiff's retaliation claims is **DENIED**.

Lastly, this Court notes that pursuant to the above-stated uncontested facts, Defendants failed to inform Hodge about his rights under COBRA. Therefore, Defendants' request for summary judgment as to Plaintiff's COBRA claims is also **DENIED**.

**Conclusion**

Since this Court finds that Plaintiff has shown that controversy exists as to material facts which preclude summary judgment at this time, for the reasons set forth herein, Defendants' motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of July, 2010.

*S/Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge